UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NEW YORK

---

JAMEL UPSON

          Plaintiff,

V.

*Acting Supt. Rich, DSS John Doe, LT. Harris,*

*C/O McQuade, C/O Snyder,*

*Jane/John Doe, et al,*

          Defendants,

---

**AMENDED COMPLAINT**

## ALL PARTIES ARE BEING SUED IN THEIR PERSONAL AND OFFICIAL CAPACITY

### PRELIMINARY STATEMENT

Plaintiff, Jamel Upson pro se, comes before this Honorable court with a civil rights complaint pursuant to 42 U.S.C. section 1983. Plaintiff is seeking compensatory, punitive and monetary damages, as well as attorney fees for the defendant's violation of plaintiff's due process rights, denial of access to the courts, deliberate indifference in failing to protect, and false imprisonment, all in violation of the plaintiff's 1st, 4th, 8th, and 14th amendments of the U.S. Constitution.

### VENUE

The unlawful acts and violations occurred in the Western District, therefore venue is proper under 28 U.S.C. section 139(b).

## PARTIES TO THIS ACTION

1. Plaintiff, Jamel Upson, at all times mentioned thereafter, is a prisoner at Green Haven C.F. serving an indeterminate sentence in the NYS Dept. of Correctional and Community Supervision (DOCCS) and is currently housed at Green Haven C.F., P.O. Box 4000, Stormville, NY 12582.

2. Defendant Rich, at the time of the herein mentioned incidents, was Acting Superintendant of Elmira C.F. He was legally responsible for overseeing the prison, and the day to day operations of the prison, including but not limited to the training and supervision of all employee's in the facility, as said defendant acting individually and/or in conjunction with other defendants, did contribute and/or cause the violation of plaintiff's rights.

3. Defendant DSS John Doe, at all times relevant to the herein incidents, was the Deputy Superintendent of Security at Elmira. He was responsible for the care, custody and safety of plaintiff, as well as other prisoners and employees under his command, as the defendant acting alone and/or in conjunction with the other defendants, did cause and contributed to the violation of plaintiff's rights.

4. Defendant Harris, at all times relevant to the herein incident, was assigned as a Lieutenant at Elmira, and was assigned by defendant Rich to conduct plaintiff's disciplinary hearing, and violated plaintiff's due process rights during said disciplinary hearing.

5. Defendant McQuade, at all times relevant to the herein incidents, was assigned as a correctional officer at Elmira prison, and McQuade, acting under the color of state law,

did knowingly and intentionally, falsify plaintiff's misbehavior report, violating plaintiff's rights.

6. Defendant Snyder and John/Jane Doe's, at all times relevant to the herein incidents, was assigned as correctional officers at Elmira, and while acting under the color of the state law, caused and/or contributed to plaintiff's rights being violated.

## PREVIOUS LAW SUITS

Upson v. NYS DOCCS, Court of Claims of NY, Claim # 135187, Claim is still pending, Judge Richard E. Sise, Claim was filed on August 10th, 2020

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

Plaintiff submitted grievances, as well as complaints, to Defendant Supt. Rich and to the Inmate Grievance Department.

## STATEMENT OF FACTS

1. On or about August 13, 2019, while attending the afternoon recreation in the field house of Elmira Correctional Facility, plaintiff was viciously attacked and assaulted from behind, and was knocked unconscious while waiting for the phone. When plaintiff woke up, he was in the outside hospital where he stayed for several days.

2. On or about August 16, 2019, plaintiff received a misbehavior report (hereinafter referred to as MBR), by defendant McQuade, who blatantly lied and falsified the MBR when he stated that plaintiff was the aggressor and was fighting. McQuade's MBR stated, "On the above date at approximately 4:20pm, while supervising recreation, I witnessed inmate J. Upson (11a1855, C-5-8 cell) walking towards and then verbally engaging inmate A. Fountain (10a6011, I-8-16 cell). I witnessed both inmates squaring up with one another. Inmate Fountain then struck inmate Upson in

the face and Upson then falls to the floor. Inmate Fountain then struck inmate Upson in the facial area. I gave a direct order to cease and separate which both inmates complied. Area supervisor was then notified."

3. Defendant McQuade's description of the incident was purposely falsified, for plaintiff was assaulted from behind and knocked unconscious, and has witnesses who observed plaintiff being attacked.

4. Defendant Harris was assigned as the hearing officer (hereinafter referred to as H.O.) to conduct the disciplinary hearing. Plaintiff pleaded not guilty to all charges and specifically requested the video footage of the incident that happened in the field house. Harris, instead of requesting the video footage from the field house, purposely requested footage from another area of the prison that had nothing to do with the incident.

5. Plaintiff was found guilty, receiving a penalty of 13 days keeplock (KL), loss of packages and loss of phones. Plaintiff appealed to Supt. Rich who affirmed defendant Harris' determination (Rich further violated plaintiff's due process rights by affirming the guilty decision from the hearing). Plaintiff filed an Article 78 petition challenging the determination. While the Article 78 petition was pending before the court, plaintiff's disciplinary hearing was reversed and expunged from his record.

6. Plaintiff was denied the minimum procedural due process protections guaranteed by the 14th amendment. McQuade's false MBR violated plaintiff's due process rights because he was disciplined, by being found guilty, without the minimum procedural due process protections guaranteed by the 14th amendment as a result of the false MBR.

7. McQuade's false MBR was the subject of the disciplinary hearing at which his due process rights were violated by Harris, who was the hearing officer, and had it not been for McQuade's false MBR there would have been no such hearing. Furthermore, Harris could not be impartial because he and McQuade are co-workers who have been working together for years, which would pre-dispose Harris to side with McQuade. Harris was bias and he, purposely, prevented plaintiff from calling his main witness, the video footage of the incident, by falsifying pertinent documents that would allow plaintiff to retrieve the footage.

8. Harris' actions, which went against the directive he is bound by governing how to conduct tier hearings pertaining to retrieving video evidence, rendered plaintiff defenseless and unable to present a proper defense to fight the charges held against him, therefore Harris' guilty decision was arbitrary. During plaintiff's entire confinement he was denied his mandatory right to an hour of recreation, he was denied telephone use, and he was also denied his basic hygienic needs. Plaintiff was forced to endure that while nursing his wounds, going through depression and suffering from headaches and blurred vision, due to the head trauma plaintiff received.

9. Plaintiff's situation, that he had found himself in, was also an atypical and significant hardship, especially since Elmira C.F. nor DOCCS hands down punishments on victims of an assault, specifically when there's video evidence that exists which can exonerate the plaintiff, but the H.O. (Harris) went through extreme measures to make sure the video never seen the light of day.

10. Plaintiff's due process violation also subjected him to have his 4th amendment right to be free from false imprisonment violated. Harris and McQuade both intended to confine plaintiff due to their actions, plaintiff was conscious of the confinement because he knew his rights were being violated which is why he appealed the guilty decision, plaintiff did not consent to the confinement because he pled not guilty to all of the charges, wrote grievances and wrote to the superintendant about the false confinement, and, lastly, the confinement was not privileged because he was confined for no apparent reason and without due process. Plaintiff was the victim of an unprovoked assault from behind which left him unconscious and rushed to the emergency room of an outside hospital, plaintiff did not have a fight. Plaintiff's hearing officer was not fair and impartial for he falsified documents that rendered plaintiff unable to present a proper defense. The hearing officer prevented plaintiff from viewing the video footage that would have exonerated him.

11. While confined plaintiff filed a grievance against defendant Harris and McQuade for illegally confining him, violating his due process rights, as well as for falsifying a MBR and other documents. Plaintiff placed the grievance in the hands of defendant John/Jane Doe who picked up the mail while he was confined. Plaintiff never received a response regarding the grievance that he submitted. Plaintiff even wrote to defendant Rich concerning his grievances not being answered, but he was never answered by Rich on those matters. However, when plaintiff seen Rich, Rich stated, "I did receive your letter concerning the grievance you submitted and I have someone looking into the matter."

12. While plaintiff was confined to the cell he wrote to Rich requesting a separation order (hereinafter referred to as sep order) be put in place against the inmate who assaulted plaintiff. In plaintiff's letter to Rich he made Rich aware of his fears of being assaulted again. Plaintiff never received a response.

13. After being attacked plaintiff complained, in writing and verbally, to Rich and DSS John Doe requesting a separation order with the inmate that attacked plaintiff. Plaintiff was receiving letters from the inmate who attacked him that stated, "When I catch you I am going to knock you out again and stomp your face in." Several prisoners also made plaintiff aware that the inmate who attacked plaintiff said that he is going to hurt plaintiff again when he see's plaintiff.

14. When defendant Rich and DSS John Doe were making rounds in C-block, plaintiff stopped Rich and the DSS and made them aware of his fears of being assaulted again by the inmate that assaulted him on 8.13.2019. He also requested a sep order to be put in place. Plaintiff made Rich aware that he wrote a letter to him requesting a sep order be put in place. Plaintiff had a copy of the letter and gave it to Rich to read. Once Rich read the letter he handed it back to the plaintiff stating, "send me another letter regarding this matter and I will look into it." DSS John Doe stated, "write me a letter also and I will look into it." Plaintiff wrote Rich and the DSS, as instructed, and never received a response from them.

15. Several weeks later Rich and DSS John Doe were making round in C-block again. Plaintiff stopped them to make them aware of his fears of being assaulted again by the inmate who assaulted him. He requested a sep order to be put in place and he also requested protective custody (hereinafter referred to as p/c) to be put in place.

Plaintiff showed Rich and the DSS a copy of the letter that plaintiff had to Rich. They both read the letter, and after reading it they both stated that they would look into the matter. Plaintiff never received a response from the two supervisors.

16. Plaintiff saw Rich again while he was making his rounds in the facility. Plaintiff stopped him and brought up that he had a previous conversation with Rich concerning a request for a sep order and of his fears of being assaulted again. He also asked Rich what were his reasons for not responding to his letters. Plaintiff made Rich aware that the inmate who assaulted him was still housed in the prison, and plaintiff asked that he be separated from the inmate and that a sep order be placed on them. Rich wrote plaintiff's name, DIN numbers and cell location down stating, "I believe this matter was taken cared of already, I will have someone look into this."

17. On or about March 12, 2020, an office from the Office of Special Investigations (hereinafter referred to as OSI) came to interview plaintiff regarding an inmate by the name of Fountain, who was the one who assaulted plaintiff. The OSI officer made plaintiff aware that they received a letter regarding Fountain attempting to be moved to the same housing unit that the plaintiff was housed in, in an attempt to assault plaintiff again or to commit some other act. The OSI officer said to plaintiff that they were aware of the incident in which plaintiff was assaulted by Fountain.

18. Plaintiff made the OSI officer aware that he spoke to Rich and the DSS requesting a sep order from Fountain, and nothing was done. The OSI officer asked plaintiff whether he was the one who wrote a letter to them regarding Fountain, plaintiff said no he was not the one who wrote the letter, and they also requested to see plaintiff's handwriting so that they could see if the handwriting matched the one from the letter.

Plaintiff turned over his journals who then confirmed that the plaintiff did not write the letter they received.

19. Plaintiff continued to write DSS John Doe and Rich asking for a sep order, as well as informing them of the meeting plaintiff had with OSI, and again plaintiff requested a sep order.

20. Plaintiff seen DSS John Doe while he was making his rounds and he asked the DSS the reason his letter were not being answered regarding his request for a sep order. The DSS stated , "I believe that I responded to your letter regarding the sep order. I do not see any reason to issue a sep order when the other inmate is in another housing unit."

21. Plaintiff made the DSS aware that he was in constant fear of being assaulted and that the OSI officer received a letter claiming that Fountain was attempting to be moved to C-block in order to assault plaintiff. The DSS walked away stating, "You are a pain in the ass Upson."

22. In October of 2020, Fountain was moved to C-block, which is the same housing unit that the plaintiff is in, and once plaintiff was made aware of this he went and spoke to Officer Snyder. Plaintiff made Snyder aware that Fountain previously assaulted him and that he was in fear of Fountain assaulting him again. Plaintiff also told Snyder about his request to Rich and the DSS to place a sep order on him. Snyder stated, "Upson, this is prison, handle your shit. I cannot help you, now go lock in."

23. Plaintiff wrote to the DSS and Rich regarding Fountain being moved to the same block as him, and he again requested to be placed in p/c. Plaintiff never received a response to his letters.

24. Another inmate informed plaintiff that Fountain was looking to hurt plaintiff. Plaintiff went and reported this to Snyder along with his fears of Fountain assaulting him again. Plaintiff also requested p/c. Snyder stated, "Get the fuck out of here with that p/c shit, I am not filling out any paperwork for p/c just because you are a pussy!"

25. On or about November 21, 2020, in the afternoon, plaintiff went to recreation. Due to Covid restrictions, the galleries on the housing units are divided for messhall runs, recreation and other movements in the facility. There are eight galleries on C-block. Recreation is ran where galleries one through four would have an hour of rec, and then galleries five through eight would go out and also have their one hour of rec. Fountain was housed on two gallery while plaintiff was housed on five gallery which means that they never seen each other. On November 21, 2020, the officers allowed the entire housing unit of C-block to attend rec together.

26. Galleries five through eight were let out first. While plaintiff was in the back corner of the field house exercising, unbeknownst to him, galleries one through four was let out. While plaintiff was exercising Fountain attacked plaintiff as his back was turned. Plaintiff attempted to run to the officer's station for help as he was trying to defend himself. Plaintiff was knocked to the ground and he was hit in the head very hard, losing consciousness for several seconds. Fountain was beating and kicking plaintiff all over his body and facial area while plaintiff tried to curl up in a fetal position. There were several officers in plaintiff's eyesight and he could hear them clearly. Plaintiff heard these officers laughing as he was assaulted. Several minutes passed before the officers finally broke up the assault.

27. Plaintiff and Fountain was took to the infirmary where he was looked at for injuries. Plaintiff had a black eye, swollen lip, and was dizzy from the hit to his head. Although plaintiff seen the nurse he knows that she did not write down any of the injuries that he had.

28. Soon thereafter plaintiff was issued a MBR to which the hearing officer found him guilty of all charges confining him to 30 days. While he was confined plaintiff wrote grievances against Rich, the DSS and Snyder for failing to take the proper steps to prevent plaintiff from being assaulted and denying him protective custody. The grievances was placed in the hands of John/Jane Doe who collected plaintiff's mail since he was unable to do it himself because of him being keeplocked.

29. Plaintiff wrote to Rich and the DSS informing them of being assaulted by Fountain, the same inmate who plaintiff made them aware of his fears of Fountain, requesting a sep order, and/or being placed in p/c/ Plaintiff never received a response.

30. In December of 2020, Snyder came to plaintiff's cell stating, "I got your grievances and complaints against me and the Deps, write another one and I will have Fountain stab your ass next time." Then Snyder walked away laughing.

31. Plaintiff wrote to Rich informing him of Snyder threatening his life and safety because of the grievances and complaints that the plaintiff wrote against Snyder, Rich and the DSS, in which Snyder had in his possession.

32. Rich and the DSS have a duty to protect plaintiff, and they were informed, by plaintiff, via written and verbal communications of that fact. Rich and the DSS failed to take preventive measures once they were made aware of plaintiff being assaulted

on August 13, 2019, and plaintiff's request for a sep order and/or p/c due to plaintiff's fears of being assaulted again.

33. Defendant Rich and the DSS were in a position to prevent plaintiff from being assaulted for the second time, which happened in November 21, 2020. The DSS is in charge of the security of the facility, and as such, failed to take preventive measures to ensure plaintiff's safety and, in fact, ignoring plaintiff's complaints, and refusing to issue a sep order and/or to place plaintiff in p/c.

34. Snyder was also made aware of plaintiff's fears of being assaulted, and his request for a sep order and/or to be placed in p/c, in which Snyder refused to do, and he also had possession of plaintiff's grievances and complaints that he wrote to Rich, the DSS and the grievance department. Snyder's actions against plaintiff was retaliatory. The speech and/or conduct that plaintiff was trying to exercise, which was the filing of prison grievances, is a constitutionally protected activity. Snyder took adverse action against plaintiff by threatening him. And there was a causal connection between the protected speech and the adverse action, because the grievances and complaints were about him.

35. Upon information and belief, Snyder and defendants John/Jane Doe denied plaintiff access to the courts, i.e. the grievance process. Plaintiff contacted the grievance supervisor in Elmira at some time in 2021, as well as the superintendant, concerning the grievances plaintiff submitted. Plaintiff was informed that there were no such grievances on file. Plaintiff observed the grievances he submitted in Snyder's hands, which were the grievances that John/Jane Doe collected from plaintiff.

36. Upon information and belief, there is a systemic behavior of grievances not being filed. Plaintiff has several declarations from inmates who can attest to the fact that they had submitted grievances against the administration in Elmira, and those grievances was never filed. They never received a response about the grievances they submitted.

37. Plaintiff did speak to Rich personally concerning Snyder having his grievances that plaintiff submitted to be filed, and Rich's only response was that he would look into it.

38. Rich, the DSS and Snyder denied plaintiff p/c, resulting in him being assaulted. Plaintiff has been unable to sleep, has constant headaches, is always on edge and jittery, fearful, constantly watching over his shoulder, and having constant nightmares. While Plaintiff was housed in Elmira C.F. he could not get himself placed on the mental health call-out. His letters requesting for help were being ignored. Plaintiff realized that he had to get out of that prison by requesting a transfer and by having his family call his counselor and central office to complain. He knew that he had to do that as soon as possible, because he could not get anything done there pertaining to his access to the grievance process and the courts, and he was also in fear of his safety.

39. Plaintiff was transferred to Green Haven in August of 2021. He was able to get the help he needed, with mental health, although it took strong due diligence and persistence, because plaintiff had to file grievances in order to be placed on the call-out. Plaintiff has been seeing a mental health counselor regularly since the summer of 2022.

### FIRST CAUSE OF ACTION

Defendant Harris, Rich and McQuade, acting alone and/or in conjunction with each other, did knowingly falsely confine plaintiff (false imprisonment), violating the Plaintiff's 4th amendment right to be free from false imprisonment. This cause of action is for false imprisonment.

### SECOND CAUSE OF ACTION

Defendant McQuade, acting alone and/or in conjunction with other defendants, did knowingly falsify a document, in the form of a MBR. That same false MBR led plaintiff to be found guilty, because plaintiff was denied the minimum procedural due process protection guaranteed by the 14th amendment. This cause of action is for false misbehavior reports.

### THIRD CAUSE OF ACTION

Defendant Harris, acting alone and/or in conjunction with each other, did knowingly falsify documents. He found Plaintiff guilty when he was the sole reason why plaintiff could not retrieve the video footage that would have exonerated plaintiff. Because of this plaintiff was denied the minimum procedural due process protection guaranteed by the 14th amendment. This cause of action is for falsifying documents.

### FOURTH CAUSE OF ACTION

Defendant Rich, the DSS and Snyder, acting alone and/or in conjunction with each other, failed to protect plaintiff. They also failed to take preventive measures to prevent plaintiff from being assaulted, which violated his 8th amendment right to be free from cruel and usual punishment. This cause of action is for failure to protect.

## FIFTH CAUSE OF ACTION

Defendants Snyder and John/Jane Doe, acting alone and/or in conjunction with each other, did intentionally deny plaintiff's access to the grievance process, which violated his 1st amendment right.

## SIXTH CAUSE OF ACTION

Defendants Snyder, Rich and the DSS, acting alone and/or in conjunction with each other, were deliberate indifferent to plaintiff's need of a sep order and/or p/c violating his rights.

## SEVENTH CAUSE OF ACTION

Defendants Snyder, Rich and the DSS denied plaintiff protective custody.

## EIGHTH CAUSE OF ACTION

Defendant Snyder knowingly retaliated against plaintiff by threatening him for writing grievances. Which also denied him access to the courts and the grievance process by him confiscating them. His actions violated plaintiff's 1st amendment right of free speech. This cause of action is a 1st amendment retaliation claim.

## ACTION REQUESTED

Pursuant to rule 8, subd, A(3) of the Federal Rules of Civil Procedures, by form of deliberate indifference, careless intentional and retaliatory acts of the defendants: Plaintiff's present state of mind as well as future mental health is at risk due to the defendants ignoring plaintiff's need for a sep order and/or p/c. Plaintiff received injuries to his head and body causing plaintiff to have a black eye, unable to see for a couple of weeks out of his left eye, constant headaches, he lost consciousness for several seconds, a swollen lip, and has nightmares of being assaulted. Plaintiff is

always nervous and jumpy; Plaintiff was scared for his safety due to Snyder threatening him about writing grievances.

Plaintiff seeks punitive damages in the amount of $2,000,000, and compensatory damages in the amount of $2,000,000.

**TRIAL BY JURY AS WELL AS ANY OTHER RELIEF THIS COURT MAY DEEM JUST AND PROPER IN THE INTEREST OF JUSTICE.**

I declare under the penalty of perjury that the foregoing is true and correct.

*/s/ Jamel Ypox/*

# **AFFIDAVIT OF SERVICE**

STATE OF NEW YORK    )
                     ) ss:
COUNTY OF DUTCHESS   )

_____Jamel Upson_____, being duly sworn, deposes and says:

I am the above-mentioned (☐ defendant, ☐ petitioner, ☐ appellant, ☒ claimant, ☐ complainant, ☐ respondent), and I have served a copy of the following papers:

Amended Complaint, Verification

Upon the following party(ies):

① Clerk, U.S. District Court
U.S. Courthouse
Buffalo, NY 14202

② NYS Att. General Office
Law Dept.
The Capitol
Albany, NY 12224

by placing the above in a post-paid envelope and depositing it in a United States Postal Service mailbox located at Green Haven Correctional Facility, Stormville, NY 12582 on the 14th day of April, 2023 as due and sufficient service.

_____Jamel Upson_____

SWORN TO BEFORE ME THIS
14th DAY OF April, 2023

_____
NOTARY PUBLIC

ELIZABETH PEREZ-COLON
NOTARY PUBLIC-STATE OF NEW YORK
No. 01PE6406912
Qualified in Dutchess County
My Commission Expires 4-20-24

S. Upson #A18559
GHCF
P.O. Box 4000
Stormville, NY 12582

22v684                    ?

Clerk, U.S.

U.S. Court

Buffalo

GREEN HAVEN CORRECTIONAL FACILITY

04/18/2023 US POSTAGE $001.98
ZIP 12582
041M11466608

USDC - WDNY
APR 2 0 2023
BUFFALO

. District Court
House
Ny 14202